**Joseph R. TUCKER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted May 17, 1979.

Decided July 23, 1979.

---

Richard M. Baumeister, Asst. Public Defender, Wilmington, for defendant below, appellant.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice:

The defendant, Joseph R. Tucker, appeals his convictions for Second Degree Burglary, Second Degree Conspiracy, and Felony Theft contending that the Trial Court erred by admitting into evidence incriminating statements in violation of his Fifth Amendment privilege against self-incrimination.

## I.

The statements were obtained after the defendant, in response to being given his *Miranda* warnings,[1] told the police that he did not wish to make a statement. The defendant argues that this constituted a violation of his rights under *Miranda*, wherein it was stated that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

The State denies that the defendant's statements were inadmissible, contending that although the defendant initially invoked his right to silence, his subsequent statements were admissible because they were volunteered "spontaneously and without solicitation" by the defendant while he was being processed.[2]

The State also argues that even if these statements were not spontaneous, they are admissible because the State "has sustained

1. See *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In *Miranda*, the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 86 S.Ct. at 1612. As "custodial interrogation" was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way," (86 S.Ct. at 1612), a spontaneous statement volunteered by a defendant that is not in response to a police query would not fall within the strictures of *Miranda*, and would therefore be admissible. See *Annot.*, 31 A.L.R.3d 565, 581 (1970).

its burden necessary to demonstrate a waiver of *Miranda* rights by the defendant." [3]

## II.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), Justice Stewart warned of the "absurd and unintended results" that would flow from a literal interpretation of the Court's statement in *Miranda* that "[i]f an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." It was there emphasized that the *Miranda* rule cannot "be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." And it was concluded in *Mosley* that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" 96 S.Ct. at 326. On the facts of the case before it, the Court held that the police had "scrupulously honored" Mosley's "right to cut off questioning", because after Mosley's assertion of that right, "the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 96 S.Ct. at 327.

## III.

■ In the instant case, after the hearing, the Trial Judge denied the defendant's motion to suppress by simply declaring that the "[a]pplication is denied." He did not provide a statement of how he interpreted the somewhat contradictory facts presented at the suppression hearing, nor did he pro-

vide a legal basis for his denial of the motion to suppress. The Trial Judge made no finding as to whether the defendant's statements were made spontaneously, or whether they were made in response to police questioning. Assuming that the defendant's statements did not fall within the exception of spontaneously volunteered statements, the Trial Judge made no finding, and the record before us provides no adequate basis for determining, whether the defendant's "'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 326, 46 L.Ed.2d 313. Moreover, this record provides no basis for evaluating the Trial Court's reaction to the State's argument that the defendant waived his privilege against self-incrimination.

## IV.

In sum and substance, on this appeal we have no way of determining whether, after the defendant declined to make a statement, "the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings . . .." *Michigan v. Mosley*, 96 S.Ct. at 327.

■ If appellate review of a denial of a motion to suppress is to be anything more than a guessing game, a Trial Judge must provide the reviewing court with an adequate statement of the factual and legal basis of his decision. As the record in this case does not contain such statement, it does not provide an adequate basis for appellate review. Therefore, we must remand this case to the Trial Court for a statement of the factual and legal basis for its denial of the motion to suppress.

\*   \*   \*   \*   \*   \*

Remanded for proceedings consistent with this opinion; jurisdiction retained.

---

**3.** The State also argues that even if the "statements are deemed to have been involuntarily made, they could have still been used for impeachment purposes since the defendant took the stand." As the State introduced Wright's statement during its case in chief, rather than during rebuttal, this argument

seems to be wholly without merit. See *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); and *Wright v. State*, Del.Supr., 374 A.2d 824 (1977).