**Joseph R. TUCKER, Defendant, Appellant,**

v.

**STATE of Delaware, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted Dec. 11, 1979.

Decided Jan. 24, 1980.

· Richard M. Baumeister, Wilmington, for defendant, appellant.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for plaintiff, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This case is before us for the second time. In the first appeal, defendant, Joseph R. Tucker, contested his convictions for Burglary in the Second Degree, 11 *Del.C.* § 825, Conspiracy in the Second Degree, 11 *Del.C.*

§ 512, and Theft, 11 *Del.C.* § 841, arguing that his Fifth Amendment privilege against self-incrimination had been violated when the Superior Court permitted, over objection, certain incriminating statements he had allegedly made to the police to be admitted into evidence. After briefing and argument we remanded, directing the Trial Court to file a "statement of the factual and legal basis for its denial of the [defendant's] motion to suppress" the incriminating statements. 405 A.2d 114 (1979). Thereafter, the Trial Court filed a supplemental opinion which has been briefed by counsel in this Court.

### I

The police obtained the statements in controversy after defendant, in response to warnings given to him, in accordance with the requirements of *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), told the police he did not wish to make a statement. The statements were obtained while defendant was in police custody at the County Building (in New Castle County). Defendant argues that such police action violates his right under *Miranda*, wherein it was stated that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 86 *S.Ct.* at 1627.

The State argues, *inter alia*, and the Superior Court held, that the statements were admissible because defendant voluntarily and spontaneously made them during routine arrest processing, after the interrogation had ended.*

### II

The Fifth Amendment provides the constitutional basis for defendant's argument that the statements are inadmissible; thus:

> "No person shall . . . be compelled in any criminal case to be a witness against himself . . .."

In *Miranda*, the Supreme Court established certain procedures which it determined are necessary to prevent abrogation of a defendant's Fifth Amendment rights. Specifically, the Court held that whenever a police officer takes a person into custody, he has an obligation, *inter alia*, to tell such person that he has the right to remain silent and the officer must stop the questioning if the person indicates that he does not want to talk.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), the Court determined that *Miranda* should not be read to "create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once [a] person in custody has indicated a desire to remain silent." The Court concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" 96 *S.Ct.* at 326. In that case, the Court held that Mosley's statements were admissible because, after he had asserted his Fifth Amendment rights, the police had "immediately ceased the interrogation, [and] resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings." 96 *S.Ct.* at 327.

### III

In this case, however, the record reports a different story. It shows that the police failed to "scrupulously honor" defendant's right to cut off questioning." The following brief excerpts from the testimony of the officer who gave defendant the *Miranda* warnings and thereafter obtained the statements in controversy contain the constitutional defect which requires reversal:

---

* *Miranda* provides protection *vis-a-vis* a statement stemming from a custodial interrogation. Because the Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody . . ." (86 *S.Ct.* at 1612), a statement spontaneously or voluntarily made by a defendant is not within the strictness of *Miranda*, and, therefore, is admissible. See *Annot.*, 31 *A.L.R.3d* 565, 581 (1970).

"[THE OFFICER]

A. When advising Mr. Tucker of his rights, I asked him if he wished to make a statement . . . He decided—he advised me he did not wish to make a statement.

.    .    .    .    .

[DEFENDANT'S COUNSEL]

Q Let me back up before we go too far and I forget what I wanted to ask. You are saying that he, after acknowledgment, said that? In other words, there was a question asked of him at this point? Am I right?

A When advising Mr. Tucker of his rights, I asked him if he wished to make a statement, and that anytime during that statement he could discontinue it, if he so chooses. He decided—he advised me he did not wish to make a statement.

Q But you continued to ask him questions about this particular offense, and he responded to an inquiry by stating just exactly what you said; 'I know who did this. I can get it back for you'?

A That's correct.

Q So in other words, this statement that you are telling us about today was given to you after he told you he did not wish to make a statement to you?

A As I would characterize it, just general conversation while we were all present in the—handling the paperwork. They were present, yes.

Q While you were handling the paperwork, you were continuing to investigate this particular offense?

A That's correct.

Q And were asking questions to this defendant and apparently another defendant about this offense?

A That's correct.

Q Even after Mr. Tucker advised you he did not wish to make a statement to you?

A That's correct."

And later, during the same testimony, the dialogue was as follows:

"Q Now, you have used the word 'acknowledge' twice to me. By 'acknowledge,' do you mean that he was responding to a question of inquiry from you regarding this case?

A Mr. Tucker was the one who volunteered the information in regards to knowing where the property was. It was at that point that I asked him if he knew, if he would provide any information. This conversation took place during the processing of him after they were all seated in the same room.

Q But you were asking him questions at this particular time about this offense?

A Yes, I was."

The Trial Court found that defendant had made the statements voluntarily, not as a result of continued questioning by the police. The Judge apparently regarded the statements as comments which came out during what the Court described as "conversations among all the people present" while the officers were doing the "paper work necessary to book defendant." But, as we read the record, and that is the only basis on which we may make a judicial review, that is not what occurred. The statements were not spontaneously or voluntarily made while the police officers were limiting their conversation with defendant to that which was incident to the booking process. On the contrary, according to the Officer's own testimony, he continued to "ask questions" of defendant about "this offense." And it was in that context that the incriminating statements were made. That scenario does not square with the *Miranda* mandate.

In our view, there is, in the record, a significant and unacceptable nexus between the continued questioning and defendant's statements. After defendant had declined to make a statement the police should have "immediately ceased the interrogation, [and] resumed [any] questioning only after the passage of a significant period of time" and after giving a fresh set of warnings. *Michigan v. Mosley,* supra. Instead, the police continued to ask questions about the offense after defendant had declined to talk, and eventually obtained inculpatory statements which were admitted into evi-

dence. Admission of such statements was prejudicial error and requires reversal of the convictions.

Reversed and remanded for proceedings consistent herewith.