**David W. DODSON,
Defendant-Appellant,**

v.

**STATE of Delaware, Plaintiff-Appellee.**

Supreme Court of Delaware.

Submitted: March 25, 1986.
Decided: June 13, 1986.
Rehearing Denied: Aug. 25, 1986.

T. Henley Graves (argued) of Fuqua and Graves, Georgetown, for defendant-appellant.

Gary A. Myers (argued), Deputy Atty. Gen., Dept. of Justice, Georgetown, for plaintiff-appellee.

Before CHRISTIE, C.J., McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

The defendant, David W. Dodson, was convicted following a jury trial in Sussex County of first degree felony murder and possession of a deadly weapon during the commission of a felony. When the jury refused to impose the death penalty, the defendant was sentenced to life imprisonment without probation or parole on the murder charge and to twenty years' imprisonment on the weapons charge. The charges stemmed from Dodson's participation in the 1980 attempted robbery of a Bridgeville liquor store and the murder of William Hastings, the liquor store clerk. A co-defendant, Percy Ewell Wainwright, was convicted of the same offenses in a separate trial and sentenced to life imprisonment, the State having declined to seek the death penalty. We recently reversed Wainwright's convictions, ruling that the police obtained certain oral statements from Wainwright in violation of his Fifth Amendment right to counsel. *See Wainwright v. State*, Del.Supr., 504 A.2d 1096 (1986).

Dodson argues on appeal that the police obtained an oral statement from him in violation of his Fifth Amendment right to remain silent under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] Because we conclude the trial

1. Because our disposition of this case turns on the defendant's right to remain silent, we need not address his argument based on the Sixth Amendment right to counsel. We do note, how-

court erred in permitting the introduction of defendant's statement, we reverse and remand for a new trial.

## I

On October 26, 1981, a Sussex County grand jury indicted David Dodson for the murder of William Hastings during an attempted robbery of a Bridgeville liquor store the night of November 30, 1980.[2] Because Dodson was incarcerated in Maryland, the Delaware charges were lodged as detainers with the Maryland correctional authorities. On October 25, 1982, acting pursuant to the provisions of the Interstate Agreement on Detainers, the defendant notified the Delaware prosecutor that he wished to be tried on the outstanding murder charge.

Dodson was transported to the Sussex Correctional Institution in Georgetown, Delaware on November 10, 1982. The next morning, Delaware State Police Detective Griffith took him to the police barracks for processing prior to his arraignment.[3] At the barracks, the detective read the defendant his rights under *Miranda*. He informed him that he was being charged with the murder of William Hastings and that it would be better if he cooperated with the investigation. The defendant said he would make a statement, but not at that time.

The officer then began questioning Dodson about another homicide. After ques-

tioning the defendant for approximately 45 minutes, the officer advised him that he had given good information, but that the police needed to know that he was telling the truth. At that point, the officer asked him if he wanted to talk about the Hastings homicide at that time. The defendant then implicated himself in the Hastings murder, telling the officer that he had acted as a lookout for the Bridgeville robbery, but that Percy Wainwright, Dodson's co-defendant, had entered the liquor store and killed the clerk. The Superior Court allowed the introduction of the statement at trial.

## II

In *Miranda*, the United States Supreme Court set forth the procedure to be followed when a defendant invokes his right to remain silent or his right to counsel under the Fifth Amendment:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.... If the individual states that he wants an attorney, the interrogation

ever, that the question of whether the analysis set forth in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), applies to the Sixth Amendment right to counsel as well as to the same right under the Fifth Amendment, argued against by the State in supplemental briefing, has been laid to rest by the United States Supreme Court's decision in *Michigan v. Jackson,* ___ U.S. ___, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In that case, the Supreme Court held that although the bright-line rule established in *Edwards* rested on the Fifth Amendment, the reasoning of that case applies with even greater force to Sixth Amendment cases. *Id.* 106 S.Ct. at 1411.

In addition, we agree with the Superior Court that the defendant cannot now complain of that Court's failure to dismiss his indictment for not bringing him to trial within 180 days under the

Uniform Criminal Extradition Law, 11 *Del.C.* § 2542(a), since defendant, through defense counsel, actively participated in negotiations before the Court resulting in necessary or reasonable continuances for good cause shown.

2. At the time of the killing, the defendant was an escapee from a Maryland prison, where he was serving the remainder of his term of imprisonment for a prior murder in Maryland. By the time he was indicted in Delaware, however, he had been recaptured by the Maryland authorities.

3. Processing includes notifying the individual of the charges against him, fingerprinting and photographing him, taking his personal history, and asking if he wishes to make a statement.

must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

384 U.S. at 473–74, 86 S.Ct. at 1627 (footnote omitted).

With regard to the Fifth Amendment right to counsel, the Supreme Court established a bright-line rule for determining compliance with *Miranda* in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See Wainwright*, 504 A.2d at 1101. The Court ruled that once an accused has expressed a desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

In *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Court clearly outlined the analysis required by the *Edwards* rule:

First, courts must determine whether the accused actually invoked his right to counsel.... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Id.* 105 S.Ct. at 493 (citations omitted).

The Supreme Court reaffirmed the requirement that the accused initiate further discussion in *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983): "[B]efore a suspect in custody can be subjected to further interrogation after he requests an attorney there must be a showing that the 'suspect himself initiates dialogue with the authorities.' " *Id.* 103 S.Ct. at 2834 (quoting *Wyrick v. Fields*,

459 U.S. 42, 46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982)). This Court summarized the controlling principle with regard to initiation in *Wainwright:* "If the police initiate further questioning after an accused requests the presence of counsel, resulting statements are excludable apart from the issue of waiver." 504 A.2d at 1102.

With regard to the Fifth Amendment right to remain silent, the Supreme Court, in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), attempted to define the scope of the *Miranda* requirement that once the person in custody indicates that he wishes to remain silent, the interrogation must cease. Determining under what circumstances questioning can be resumed once an accused invokes his right to remain silent, the Court ruled that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " *Id.* at 104, 96 S.Ct. at 326 (footnote omitted). The Court found that Mosley's right had not been violated because the police immediately ceased the interrogation once he invoked his right, resumed questioning only after a significant period of time had passed and fresh warnings had been given, and restricted the second interrogation to a completely different crime. *Id.* at 106, 96 S.Ct. at 327.

### III

■ The right to remain silent is a constitutional right, subject to protection similar to the protection afforded the right to counsel. Consequently, when a defendant invokes his right to silence, the police may not initiate continued interrogation on the crimes at issue. *Cf. Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1633; *Wainwright*, 504 A.2d at 1102.

■ In this case, Detective Griffith directed the conversation with Dodson back to the Hastings murder after questioning him for 45 minutes about a separate homicide. By again questioning Dodson about the crimes for which he was charged after he had invoked his right to silence as to

those charges in the same conversation 45 minutes earlier, the officer initiated interrogation on a subject he had a duty to avoid for the time being, thus violating the defendant's Fifth Amendment right to remain silent. Under an *Edwards*-type analysis, the State was not free to reapproach the defendant for a statement as soon as it did in this case.

Moreover, analyzing this case under *Mosley*, it is clear that the officer did not scrupulously honor the defendant's right to cut off questioning. 423 U.S. at 104, 96 S.Ct. at 326. As in *Tucker v. State*, Del. Supr., 411 A.2d 603 (1980), there was a "significant and unacceptable nexus" between the officer's continued questioning and Dodson's statement. *Id.* at 605. After the defendant declined to make a statement concerning the Hastings murder, Detective Griffith should not have directed the questioning back to that same subject in the same conversation only 45 minutes later, giving no fresh warnings. *See Mosley*, 423 U.S. at 106, 96 S.Ct. at 327.

\* \* \* \* \* \*

REVERSED and REMANDED for a new trial.