IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, :
 :  I.D. No. 1511002338A&B
v. :  Kent County
 :
RONDREE CAMPBELL, :
 :
 Defendant. :

Heard: March 16, 2017
Submitted: March 29, 2017
Decided: April 4, 2017

## ORDER

Upon Defendant's Motion to Suppress.
*Granted.*

Kenneth M. Haltom, Esquire and Nicole S. Hartman, Esquire of the Department of Justice, Dover, Delaware; attorneys for the State.

Ronald D. Phillips, Esquire and Julianne E. Murray, Esquire of MurrayPhillips, P.A., Georgetown, Delaware; attorneys for the Defendant.

WITHAM, R.J.

Before the Court are a Motion to Suppress filed by Defendant Rondree Campbell and the State's Response to that motion.[1] Both parties have submitted supplemental briefs to the Court. The motion raises a single question:

During the course of a custodial interrogation, Mr. Campbell said "bye" to the police detective. The detective then asked Mr. Campbell if he was "done talking." Mr. Campbell replied "Yeah," prompting the detective to leave the room. The detective re-entered the room some fifteen minutes later and began questioning Mr. Campbell about the same incident. Did Mr. Campbell invoke his right to remain silent, and if so, should his subsequent statements be suppressed?

Mr. Campbell's words constituted an unambiguous invocation of his right to remain silent. Because the detective and other police officers did not scrupulously honor Mr. Campbell's request, his motion to suppress is **GRANTED**.

## STANDARD OF REVIEW

"The Fifth Amendment of the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.'"[2] Likewise, article I, section 7 of Delaware's Constitution provides that the accused "shall not be compelled to give evidence against himself or herself." "When the admission of a custodial interrogation statement is challenged, the burden is on the State to demonstrate by a preponderance of the evidence that the suspect's *Miranda*

---

[1] This motion to suppress was filed before the Court granted a motion to sever one count of the indictment. This ruling applies to both cases.

[2] *United States v. Andrews*, 231 F. App'x 174, 176 (3d Cir. 2007).

2

rights have been waived."[3]

## FACTS

Mr. Campbell is accused of a single count of Murder in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony, nine counts of Reckless Endangering in the First Degree, one count of Carrying a Concealed Weapon, and a now-severed count of Possession of a Firearm by a Person Prohibited.

Dover Police Department detectives took Mr. Campbell into custody on November 4, 2015, while he was checking in with his probation officer. Police video shows that Mr. Campbell sat alone in an interview room at the police department from at least 1:31 that afternoon until 2:13 p.m., when Detective Nathaniel Warren came in and began the interrogation.[4]

About two minutes later, after asking Mr. Campbell some preliminary questions, Detective Warren read him his *Miranda* rights from a card:

> NW [Nathaniel Warren]: You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one can be appointed to you, uh, before any questioning if you wish. You can decide at any time to exercise these rights and not make any statements at all. Do you understand those rights?
> RC [Rondree Campbell]: Yeah.
> NW: Do you wish to talk to me at all?

---

[3] *Hubbard v. State*, 16 A.3d 912, 917 (Del. 2011) (citing *Miranda v. Arizona*, 384 U.S. 436, 475 (1966); *DeJesus v. State*, 655 A.2d 1180, 1192 (Del. 1995)).

[4] State's Ex. 2.

RC: Sure.[5]

The interrogation continued. About twenty-nine minutes later, Detective Warren stood up and left the room.[6] After about five minutes, he returned and continued the interrogation.[7] Over the next fifteen minutes, the tone of the interview became decidedly more heated, culminating in the following exchange:

> NW: You've got to give me something better than that because I'm telling you right now, you're going to be sitting here until that warrant's done. Once that warrant's done, you're going to prison. There's no –
> [Crosstalk]
> RC: I don't (UI). Whatever.
> NW: – other way around it.
> RC: Bye.
> NW: You done talking?
> RC: Yeah, what is you – what is there to say?
> NW: Think about it.[8]

Detective Warren left the room. Mr. Campbell knocked on the door on two occasions. When Detective Warren answered the door, Mr. Campbell asked to speak with his mother. When Mr. Campbell returned to the room, he attempted to redirect the interview:

> NW: They're going to bring your, uh, stuff in here so you can

---

[5] State's Ex. 1 at 3. The Court notes that no written waiver was signed by the defendant.
[6] State's Ex. 2.
[7] *Id.*
[8] State's Ex. 1 at 23.

4

make a phone call. Look, man, I just want to say something. I want to clear something up with you a little bit. Um. I understand the situation and how I came at you was a – it was strong. Um. But at the same time I just want to be able to let you know, look, um, my supervisor now he's the one who investigated, um, the death of your friend Amir out in [Whatcoat], um, so I mean they know you've been in here before. They know you're decent and they know you have a heart. They know you're a good dude working, doing whatever you want to do. I just for myself want to clear some things up. That's why I brought that map in here. Just to clear up some things. 'Cause, look, I know when I'm talking north, south, and everything like that, sometimes it just gets a little funky. Um. I just want to be able to clear this situation up with you and just walk you through this. Are you okay with that? You're good – is that?

> RC: Um, whatever.
> NW: Whatever?
> RC: Yeah.
> NW: Okay. Um. I mean I read you, uh, your rights earlier and everything like that but I just wanted to be able to go back through this with you again, is that okay with you?
> RC: Mm-hmm.[9]

The interrogation then continued for another seven minutes before Detective Warren again left the room.[10] He returned about twenty-five minutes later to show Mr. Campbell surveillance video, and left again after twenty-three minutes of interrogation.[11] After Mr. Campbell sat in the room alone for another twelve minutes

---

[9] State's Ex. 1 at 23–24.

[10] State's Ex. 2.

[11] *Id.*

or so, Detective Warren returned to the room.[12] And after another five minutes of interrogation, around 4:05 p.m., the detective cuffed Mr. Campbell and escorted him to the cell block.[13]

Within about ten minutes, while Mr. Campbell and Detective Warren were standing near the booking lockers of the cell block, Sergeant Matthew Knight and Detective Peer approached Mr. Campbell.[14] Sergeant Knight had been watching the interview from another location and "felt that Campbell [didn't] completely trust Detective Warren and was holding back from disclosing further details of the incident."[15] The sergeant and Detective Peer went to speak with Mr. Campbell in his cell less than ten minutes later, making small talk.[16] Eventually Sergeant Knight coaxed Mr. Campbell into talking further:

> I emphasized to Campbell that I knew him personally and I could tell he [wasn't] being completely forthcoming. I also emphasized to Campbell that he could trust Detective Warren. Rondree agreed to continue talking with Detective Warren and we went back to the interview room in the detective area.[17]

After Mr. Campbell spoke with the sergeant, Detective Warren brought him

---

[12] *Id.*

[13] *Id.*

[14] *Id.*; Def.'s Mot. to Suppress Ex. A.

[15] Def.'s Mot. to Suppress Ex. A.

[16] *Id.*

[17] *Id.*

back to the interview room and questioned again.[18] The first segment of the second interview lasted about eight minutes, during which Mr. Campbell admitted to the shooting at 8 South New Street.[19] After around a thirteen-minute break in the interrogation, Detective Warren returned to arrange having Mr. Campbell lead the police to the gun.[20] He left the room one last time, around 4:56 p.m., and Mr. Campbell remained in the interview room on his own until at least 5:40 p.m., when the video ends.[21]

Mr. Campbell was taken to Milford in a Dover Police Department detective car and led detectives to the first firearm, a .22 caliber handgun.[22] On the way back from the police department, Sergeant Knight and Detective Warren spoke with him about the second firearm.[23] The conversation was not captured on audio or video.

Around 9:56 p.m., Mr. Campbell was brought back to the station interview room and Sergeant Knight read him his Miranda rights again.[24] In response, Mr. Campbell, visibly subdued, gave a barely perceptible nod.[25] He then was questioned about the use of a second firearm, to which he gave brief responses.[26] After

---

[18] *Id.*; State's Ex. 3.

[19] State's Ex. 3.

[20] *Id.*

[21] *Id.*

[22] Def.'s Mot. to Suppress Ex. B.

[23] *Id.*

[24] State's Ex. 4.

[25] *Id.*

[26] *Id.*

detectives left the room and until Detective Warren returned, Mr. Campbell appeared to fall asleep.[27]

Mr. Campbell filed a motion to suppress his statements, and the State filed a response in opposition.

This is the Court's decision on Mr. Campbell's Motion to Suppress.

## THE PARTIES' CONTENTIONS

Mr. Campbell contends that the fact of his best friend's murder rose to the level of emotional manipulation. Combined with his experience of having been taken into custody as a material witness, he argues, the sergeant's actions coerced him into confessing. He also contends that the unrecorded conversations in the car amounted to coercion that was not cured by the second set of *Miranda* warnings. At the hearing on this motion, Mr. Campbell also pointed to his termination of the interview when asked if he was "done talking" as an indication that he had invoked his right to remain silent.

The State argues that threats to arrest close family members, promising to keep allegations out of the newspaper, and even providing false information to suspects have all been held not to amount to coercion. It contends that the friendly tone of the interaction with the sergeant and his suggestion that Mr. Campbell be truthful did not overbear Mr. Campbell's will and render the confession involuntary. The State argues that Mr. Campbell saying "bye" was not an invocation of his right to remain silent, and at best was an ambiguous invocation.

---

[27] *Id.*

## DISCUSSION

The police did not scrupulously honor Mr. Campbell's invocation of his right to remain silent. Instead, they continued their questioning for nearly nine hours with only brief interruptions. The attempt to re-Mirandize Mr. Campbell after returning to the station was thus ineffective. As a result, all of the statements he gave after he invoked his right will be suppressed.

Few procedures are more defined than the warnings that law enforcement must give defendants under *Miranda v. Arizona*.[28] If the defendant invokes his right to remain silent, questioning must cease:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.[29]

Under the Delaware Constitution, when a defendant's invocation of his right to remain silent is unclear or ambiguous, police must clarify the defendant's intention before continuing.[30]

After the defendant invokes his right to remain silent, "the police may not

---

[28] 384 U.S. 436.

[29] *Id.* at 473–74.

[30] *Draper v. State*, 49 A.3d 807, 810 (Del. 2002) (citing *Crawford v. State*, 580 A.2d 571, 577 (Del. 1990)).

9

initiate continued interrogation on the crimes at issue."[31]  "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'"[32]

In some circumstances, police may continue questioning the defendant after the defendant invokes the right to remain silent.  For example, the United States Supreme Court found that a defendant's right was not violated where "the police immediately ceased the interrogation once he invoked his right, resumed questioning only after a significant period of time had passed and fresh warnings had been given, and restricted the second interrogation to a completely different crime."[33]

Our Supreme Court has held that police violated a defendant's right to remain silent where, after the defendant invoked his right, the detective "directed the questioning back to that same subject in the same conversation only 45 minutes later, giving no fresh warnings."[34]

A defendant may also reinitiate the encounter himself, so long as it is the product of an "informed and voluntary decision" of the defendant.[35]

---

[31] *Dodson v. State*, 513 A.2d 761, 763 (Del. 1986) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Wainwright v. State*, 504 A.2d 1096, 1102 (Del. 1986)).

[32] *Michigan v. Mosley*, 423 U.S. 96, 103 (1975).

[33] *Dodson*, 513 A.2d at 763 (citing *Mosley*, 423 U.S. at 106); *see also DeShields v. State*, 534 A.2d 630, 651 (Del. 1987).

[34] *Dodson*, 513 A.2d at 764.

[35] *DeShields*, 534 A.2d at 652 (citing *Mosley*, 423 U.S. at 107–08 (White, J., concurring)).

Here, the video record of the interrogation makes clear that Mr. Campbell invoked his right to remain silent early in the first interview. Even to the extent that simply saying "Bye" might have been an ambiguous invocation of his right to silence, Detective Warren's question (some form of which was required under the circumstances) quickly cleared up that ambiguity. When Detective Warren asked if Mr. Campbell was done talking, and Mr. Campbell replied "Yeah," all questioning should have ceased.[36] Mr. Campbell had unambiguously invoked his right to remain silent.

The next question, then, is whether subsequent statements also have to be suppressed. The unfortunate answer is "yes." In *Dodson*, forty-five minutes were not a substantial amount of time; here, Detective Warren returned to question Mr. Campbell only fifteen minutes after he had invoked his right to remain silent. And also like in *Dodson*, Detective Warren returned to question Mr. Campbell about the same crime, not a separate incident. Given that failure to scrupulously honor Mr. Campbell's request, the detective's attempt to refresh his *Miranda* waiver without so much as restating the warnings was improper.

And that pattern of improper conduct continued throughout the detectives' interactions with Mr. Campbell that day, while he was continuously in custody.

---

[36] *Accord Commonwealth v. Smith*, 46 N.E.3d 984, 990, 992–93 (Mass. 2016) (defendant's statements that "I'm done" and "I'm done talking. I don't wanna talk no more" were an unambiguous invocation of his right to remain silent); *People v. Arroya*, 988 P.2d 1124, 1134, 1135 (Colo. 1999) (en banc) (affirming trial court's determination that defendant clearly invoked her right to remain silent where she stated "I don't wanna talk no more").

Despite having watched the interview and presumably having known that Mr. Campbell had invoked his right to silence, Sergeant Knight kept speaking to him in the cell block until Mr. Campbell finally gave in and began to speak again, eventually confessing to the crime. Again and again, the officers showed no sign of honoring Mr. Campbell's invocation of his right. That failure to scrupulously honor Mr. Campbell's request rendered all of his statements that day, including the conversations in the detective car, inadmissible.

Sergeant Knight's later attempt to re-Mirandize Mr. Campbell around 10:00 p.m. did nothing to change the calculus. The extended interrogation in custody, continuing from interview room to cell block to interview room to detective car and finally back to the interview room, evidenced a continual failure to honor Mr. Campbell's request to cut off questioning. Simply rereading Mr. Campbell his *Miranda* rights did nothing to cleanse the officers' ongoing violation, at least, as here, when there was no substantial break in the interrogation, the questioning was on the same topic, and there was no clear expression of waiver from Mr. Campbell. His statements after being re-Mirandized were still tainted by the earlier violation.[37] They must also be suppressed.

Having decided the statements are inadmissible for failure to honor Mr.

---

[37] The Court also notes that the videotape hardly establishes a knowing and voluntary waiver after the second set of *Miranda* warnings. Mr. Campbell's responses to Sergeant Knight's questions consisted of barely perceptible head nods, one-word answers and short sentences. As soon as the detectives left the room, nearly nine hours into their questioning, Mr. Campbell promptly appeared to fall asleep. But his later statements' inadmissibility is due not to the ineffective waiver but due to the officers' failure to scrupulously honor Mr. Campbell's invocation of his right to silence.

12

Campbell's *Miranda* rights, the Court does not reach Mr. Campbell's arguments about voluntariness.

The Court must repeat another court's "caution to prosecutors and other law enforcement agents involved in custodial interrogations: when the arrestee says he wants to quit talking, and says he doesn't want to answer any more questions, *stop the questioning.*"[38]

## CONCLUSION

Mr. Campbell invoked his right to remain silent, and the detectives did not scrupulously honor his request. As a result, all of the statements that followed were tainted by a *Miranda* violation and are suppressed. Mr. Campbell's Motion to Suppress is **GRANTED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:  Prothonotary
xc:  Kenneth M. Haltom, Esquire
     Nicole S. Hartman, Esquire
     Ronald D. Phillips, Esquire
     Julianne E. Murray, Esquire

---

[38] *Davis v. Greer*, 13 F.3d 1134, 1139 (7th Cir. 1994). This caution extends to the conduct exhibited by the defendant after he indicates he wants to quit talking.

13